DECISION
This is an appeal from a December 2, 1998 decision of the Town of Westerly Zoning Board of Review (the Board). In its decision, the Board denied plaintiff Bess Eaton Donut Flour Company Inc.'s (appellant), request for a special use permit for the construction of a bake shop with a drive-thru window. Jurisdiction is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-69.
 Facts/Travel
The subject property, identified as Assessor's Plat 23, Lot 65, is located on Route 1, Bradford Road, in Westerly, Rhode Island. At the time of the application, the property was zoned as B-2.[1] The appellant filed an application for a special use permit with the Board for a drive-thru window on property on which the appellant intended to construct a coffee and bake shop. The lot on which the applicant seeks to build comprises approximately 38,000 square feet. The applicant proposes to build a 28-seat doughnut shop consisting of 2,042 square feet.
At a properly advertised public hearing on November 24, 1998, the board heard testimony from three of the appellant's experts, the appellant's construction manager, and from several neighborhood objectors. One of the appellant's experts, Francis Perry, a traffic consultant, testified that he performed a traffic study on Bradford Street during times projected to be busiest at the appellant's proposed business. After reviewing plans for the proposed drive-thru, he averred that the wait time for this facility would be less than a minute per vehicle from the time a person his or her order until said order was completed. He also testified that the traffic flow for said drive-thru would not cause any serious delays or interruptions to the traffic stream. Additionally, Mr. Perry stated that the amount of traffic attracted by the site would have an insignificant increase in traffic on Route 91. (Tr. at 15)
The Board also heard testimony from appellant's expert, Michael Lenihan, a certified real estate appraiser. After visiting the proposed site, reviewing relevant town ordinances and examining surrounding uses, Mr. Lenihan determined that the proposed drive-thru would have no negative impact on neighboring properties and would be compatible with surrounding uses. Additionally, he testified that the proposed use would, in fact, protect property values in the surrounding neighborhood. (Tr. at 19).
The Board also heard testimony from Tyrel Rhodes, the principal designer of the bake shop and drive-thru layout. Mr. Rhodes stated that there was nothing peculiar about the property and that the land was basically flat. He stated that from an engineering and survey perspective there would be no problem at all with constructing a bake shop with a drive-thru use at the proposed site.
Three neighborhood residents spoke against the drive-thru at the hearing. The neighbors were concerned with potentially increased traffic in the surrounding area, including an increase in traffic accidents, an increase in litter, an increase in noise, and potential loitering at the bake shop by local teenagers. The objectors were further concerned with the lighting arrangements of the proposed business. One neighborhood objector testified that the proposed use of the property was incompatible with the zoning ordinance for neighborhood business and that the proposed facility was not a neighborhood business, but rather "asphalt and lights, garbage and noise." (Tr. at 28).
The Board continued the hearing after the objectorS' testimony in order to view the subject property and to further investigate the concerns of the neighboring land owners. AL the hearing on December 2, 1998, counsel for the appellant proposed several plans to alleviate some of the concerns of the neighboring landowners. Specifically, he offered box top lighting to reduce glare, face to Lace ordering to reduce speaker noise, strict enforcement of a no loitering policy, litter control, and placement of signs to decrease speeding. The Board further heard additional testimony from other neighbors who opposed the proposed drive-thru. The Board then entertained but subsequently denied a motion to remand the matter to the planning board. The hearing was then closed and the board discussed and voted on the special use permit application.
 The Board's Decision
The Board unanimously voted to deny the request for a special use permit for the drive-thru. In denying said permit the Board reasoned that the inclusion of the drive-thru was not compatible with the neighborhood business use and that it would hinder the future development of the town as set forth in the comprehensive plan. The Board members were also concerned over the increase in traffic as they felt the increased ingress and egress would create a nuisance. One Board member analyzed the application under the neighborhood business ordinance stating "a neighborhood business zoning district is intended for areas characterized by small retail and personal service operations . . — I don't feel that a drive-in window and a Bess Eaton fall within that category." (Tr. at 78). Another Board member stated that: "the new zoning ordinance is 180 degrees different than what the old ordinance was doing in this situation." Therefore, he stated that to allow a drive-thru would be a hindrance to the development of the town (Tr. at 77-78).
On appeal, the appellant argues that the Board improperly focused on the current zoning ordinance enacted in 1998 which is neighborhood business, rather than the prior ordinance which B-2, and would have permitted a drive-thru facility at the proposed site. The appellant also argues that the Board's decision was not based on competent evidence in the record and that the only substantial and reliable evidence in the record supports the grant of a special use permit. Lastly, the appellant contends that the Board failed to make findings of fact in support of their conclusions.
 Standard of Review
This court possesses appellate review jurisdiction of a zoning board of review decision pursuant to G.L. § 45-24-69(D):
 "(D) The court shall not substitute its judgment for that of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
(1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"In reviewing the action of a zoning board of review, the trial justice "must examine the entire record to determine whether "substantial" evidence exists to support the board's findings. Toohey v. Kilday,415 A.2d 732, 735 (R.I. 1980) (citing DeStefano v. Zoning Bd. ofReview of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979);Apostolou v. Genovesi, 120 R.I. 501, 504, 388 A.2d 821, 824-25 (1978)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Apostolou at 825. Moreover, this court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey,495 A.2d 257 (R.I. 1985) (citations omitted).
 Special Use Permit
At the time of the appellant's application, the property in question was classified as B-2, which permitted a drive-thru restaurant by special use permit only. A special use permit affords zoning relief when the project involves a conditionally permitted use. Northeastern Corp. v.Zoning Bd. Shoreham, 534 A.2d 603 (R.I. 1987). The standards for a special use permit, according to Westerly Zoning Ordinance 3.4(E) (1994), provide in pertinent part:
 "(1) It shall be compatible with neighboring uses.
 "(2) It will not create a nuisance in the neighborhood.
 "(3) It will not hinder the future development of the Town as set forth in the Comprehensive Plan."
The appellant argues that the Board improperly analyzed its application for a special use permit under the new zoning ordinance, zoning the area as neighborhood business, rather than under the ordinance in effect at the time the application was filed. A neighborhood business district is defined as
 "intended for areas characterized by small retail and personal service operations but surrounded by residential areas." 1998 Zoning Ordinance 3.4(B)(5), at 23; A. 135.
Appellant argues that the Board's determination that a drive-thru facility would not be compatible in a neighborhood business zone was incorrect because the prior zoning ordinance implicitly considered a drive-thru use to be harmonious with the existing uses in the area. Appellant further asserts that Board improperly considered the amended zoning classification (neighborhood business) in making its decision. Appellant states that they have a vested right to be considered under the 1994 ordinance because that is when they submitted their application for development. the relevant ordinance states:
 "An applicant shall have a vested right to have a development application reviewed and approved in accordance with the provisions of the zoning ordinance in effect at the time that the application for development was submitted..." Westerly Zoning Ordinance Art VII, § 7.4(A) (Oct. 16, 1998).
Alternatively, the Board argues that they did in fact consider the appellant's application under this old ordinance. The transcript of the hearing clearly reveals that the Board accepted the current application under the 1994 ordinance. In fact, the Chairman stated that "this application will be in front of us under the old regulations." (Tr. at 7).
Although the Board followed the standards set forth in the old ordinance in formulating its decision, they were required to determine whether the proposed site would hinder the "future development" of the Town. Under this requirement in the old ordinance, the Board was able to formulate a decision which in theory came under the old ordinance, but in practice, more closely resembled standards set forth in the 1998 revised ordinance. For example, during the Board's discussion of the present application, one member stated that although "[appellant is] here under the old rules, we have to look to the future too; neighborhood business (Tr. at 59). The Board stated in its decision that the applicant's proposal would "hinder the future development of the town because of the fact the new zoning ordinance that we're putting into effect is 180 degrees different than what the old ordinance was doing in this situation. So that with a new ordinance we're trying to move the town forward, so it would in a way be a hinderance to the development of the town." (Tr. at 77-78). Accordingly, the Board maintains that it was proper to take into account the area's current neighborhood business classification and its prohibition against drive-thru facilities.
Our Supreme Court has determined that "the validity of zoning use regulations is entirely dependent on their consistency with the comprehensive plan pursuant to which such regulations were enacted."Palazzi v. State, 113 R.I. 218, 319 A.2d 658 (1974). Additionally, "all municipal land use decisions shall be in conformance with the approved municipal comprehensive plan." G.L. § 45-22.2-13(C)See also Natale v. Kennebunkport Bd. of Zoning Appeal,363 A.2d 1372 (Me. 1976)(zoning ordinances must be interpreted in harmony with the overall scheme envisioned by the municipality). In Curran v.Church Community Housing Corp., 672 A.2d 453 (R.I. 1996), our Supreme Court decided that the zoning board acted within its authority in granting approval of a housing project for the elderly even though it was not in accordance with existing zoning ordinance. In its decision, the Court determined that the ordinance was outdated and did not conform to the town's recently adopted comprehensive plan. Similarly, the instant Board found that here the proposed drive-thru is not in conformance with the current zoning trend and would impair the town's comprehensive plan. Accordingly, the Board did not act in excess of its authority in considering the amended ordinance and comprehensive plan as they pertained to the future development of the town.
The appellant additionally argues that the Board's decision did not rest on any competent evidence in the record and that the Board did not make findings of fact in support of its decision. In Toohey v. Kilday,415 A.2d 732, 737 (1980), the Court noted that when reviewing an action of the zoning board, the trial justice must examine the entire record to determine whether substantial evidence exists to support Board's findings. However, "the court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact." G.L. § 45-24-69(D).
In supporting its final findings, the Board reasoned that the drive-thru would not be compatible with surrounding uses and that the use would hinder the future development of the town. One member stated that it would change the effect of the neighborhood in an adverse way to allow certain cars to have ingress and egress to that property. Another member stated that: "a drive in business would not be compatible with the area as there are no other drive-in businesses in that area, second, it will create a nuisance, the fact that there is a drive-in window there it will gather more traffic from surrounding areas into that spot" (Tr. at 77).
The record evidences that the board did not merely state conclusions as the Board did in Toohey, but rather listed the facts on which they based their conclusion that the proposed use would be incompatible with current uses, increase congestion creating a nuisance, and have a detrimental affect on the future development of the town. Our supreme court has stated on many occasions that a municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the action taken Zammarelli v.Beattie, 459 A.2d 951, 953 (R.I. 1983). The Board did articulate findings of fact and conclusions of law in denying the special use permit. The Board also addressed all necessary legal elements before denying the special use permit.
 Conclusion
After review of the entire record, this court finds that the decision by the Board to deny a special use permit is supported by the reliable, substantial, and probative evidence in the record and was not in excess of' its authority. Substantial rights of the appellant have not been prejudiced.
Counsel shall submit the appropriate order for entry.
[1] The property is presently classified as a neighborhood business zone. Pursuant to G.L. § 45-24-44, an application should be reviewed in accordance with the zoning ordinance in effect at the time the completed application is submitted for review.